## A. G. GOODNIGHT v. STATE.

No. A-9187. Sept. 17, 1937.
(71 Pac. 2d 789.)

O. A. Brewer, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DAVENPORT, P. J. The plaintiff in error, hereinafter referred to as the defendant, was charged with the larceny of domestic fowls, one turkey gobbler; was tried, convicted, and sentenced to serve a year in the state penitentiary, and has appealed to this court.

The testimony on behalf of the state in substance is that Mrs. Mary Sons, who lived southeast of Boswell, Okla., was the owner of some turkeys. She was working in town and left her property, including her turkeys, in charge of Fred Karkkendall at her home place. Among the turkeys was a mammoth bronze gobbler; this gobbler was missed from her flock of turkeys by Mr. Karkkendall. "I saw the turkey when Mr. Karkkendall brought it in after he recovered it. I had my turkeys marked with a

punch in the web of the foot the 4th or 5th of March, 1935."

L. O. Smith stated he lived at Boswell on or about the 5th of October, 1935; that he knew A. G. Goodnight, saw him on that date. Witness stated Goodnight came to his place about 9 o'clock at night and wanted him to take the defendant and two others home; Goodnight lived seven or eight miles in the country; that he paid him by giving him a turkey for hauling him out home in his car. When he brought the turkey home he clipped its wings to keep it from flying out of the yard and turned it loose. Witness further stated:

"About three days after I got the turkey Mr. Karkkendall came to my house; my wife told him I had traded for or bought a turkey; I came in about four o'clock that afternoon and met Mr. Karkkendall and he asked me about the turkey and I told him I got it from the defendant and to go ahead and get it if it was his turkey. I drove the parties out in the country and we stopped at the house and Mr. Goodnight got the turkey. I thought he lived there, but later learned Mr. Karkkendall lived there. We drove up to this place and the defendant got out of the car and told me he would get the turkey, and went in and got it. We met Lester McGeary on the road; Oster Bob was with us."

Mrs. Mary Sons, recalled for further examination, stated, in the summer before she went to town she traded one turkey hen with the father of the defendant Goodnight for another turkey hen; that he took the turkey home and if it ever came back to her house she never knew anything about it; when the turkey hen was presented to the witness Mrs. Sons, she stated positively that it was not her turkey hen; she did not look like an old hen; her turkey had a punch in the foot and she did not see any punch in the foot of this turkey hen.

The defendant, testifying in his own behalf, stated Mrs. Sons and his father had swapped turkey hens, and his father brought his turkey hen down home and she ran off and went back; they tried to get her several times but could not; he traded this turkey hen to Booster Smith to take them out home; that he bought this turkey hen for 50 cents; and that he went up to the Karkkendall place and got the hen.

On cross-examination witness stated he knew nothing about the turkey at Mr. Crowder's place:

"When I hired Mr. Smith to take me home I told him I would buy him some gas and he said all right, I don't know how much he was going to charge, he said he would make it light; we bought some gas and I think some oil, I would not be positive; I told him I would pay him in a turkey, and let the others pay me and he said 'All right; I have to buy meat anyway'; we went to my house first; in order to get to my house you have to pass Mrs. Sons; we did not stop on the way down there; I live about a half mile from Mrs. Sons' place where Mr. Karkkendall lives; after we got home I got in the car and went back to Mrs. Sons' place; the turkeys were on the roost, a whole bunch of them, I got Mr. Smith a turkey. I had not been drinking very much that night."

The foregoing is in substance the testimony.

The defendant has assigned six errors alleged to have been committed by the trial court. The fifth error assigned by the defendant is: "Error of the court in overruling defendant's motion for a new trial."

All of the other assignments are embraced in this assignment. There is no controversy between the evidence of the state and the defendant as to the fact that the defendant had the witness L. O. Smith drive the defendant and other parties out in the country to defendant's home;

that the defendant had the witness Smith drive back from his home to the home of Mrs. Mary Sons; at the time of the taking of this turkey this home was occupied by Fred Karkkendall; and that the defendant went into where Mrs. Sons' turkeys were roosting and got this gobbler and delivered it to the witness L. O. Smith.

The defendant in his defense says that some time the previous summer Mrs. Sons and his father had traded turkey hens, and that the turkey hen his father got from Mrs. Sons had gone back to her place; that he bought this hen from his father; and that he stopped there the night of the taking of this turkey hen and went to the turkey roost and got this gobbler. The jury evidently did not believe the testimony of the defendant. If, as stated by the defendant, he bought this turkey hen from his father and this hen had gone back to the Sons place, that would not be a defense to the charge in this case, for the reason that the turkey the defendant took from the roost and turned over to the witness Smith was a gobbler. His statement that he went to the Sons home and took this gobbler is practically a confession of guilt. Any one familiar with a flock of turkeys can readily detect a gobbler from a hen.

There is very little conflict in the testimony in this case, and this court has repeatedly held that, before a conviction will be reversed as contrary to the evidence, it must appear that there is no testimony in the record from which the jury could rationally conclude the defendant was guilty, unless it appears that the jury was influenced by improper motives. Wininger v. State, 55 Okla. Cr. 78, 24 Pac. (2d) 664.

Where the evidence and reasonable and logical inferences to be drawn from it are sufficient to convince the jury beyond a reasonable doubt of the guilt of the defend-

ant, this court will not disturb the verdict for insufficiency. Pickett v. State, 35 Okla. Cr. 60, 248 Pac. 352; Clemmer v. State, 56 Okla. Cr. 354, 40 Pac. (2d) 37.

There is no evidence in the record showing the jury was biased or prejudiced against this defendant, and the evidence is amply sufficient to sustain the verdict. The motion of the defendant for a new trial was properly overruled. He was accorded a fair and impartial trial. The instructions of the court correctly advised the jury as to the law to guide them in their deliberations upon the facts introduced in evidence. No errors appear in the record warranting this court to set aside the verdict of the jury and grant the defendant a new trial.

The judgment of the trial court is affirmed.

DOYLE and BAREFOOT, JJ., concur.