## OSCAR PHILLIPS v. STATE.

No. A-9315.   Nov. 19, 1937.

(73 P. 2d 879.)

Hatcher & Bond, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

DAVENPORT, P. J. The information charged Oscar Phillips, the defendant in the trial court, with the crime of forging a check for $6.50, by using the signature on the check of D. D. Walker. He was tried, convicted, and sentenced to serve a year in the state penitentiary. The record was properly preserved, and the defendant appeals.

In substance the testimony for the state is: E. E. Wegener stated: "I live at Minco, Okla.; am engaged in the grain and hatchery business; I saw the defendant in this case in the month of April, 1936, at which time he ordered a hundred baby chicks, and gave his name as R. J. Sims." The witness Wegener introduced his record showing the order for the 100 chicks in the name of R. J. Sims. The witness further testified after the defendant was placed in the Grady county jail:

"I came down and identified him as the man who ordered the baby chicks from me, after which I marked the order, 'No Sale.' On the 15th of April, 1936, the defendant returned to my place of business and gave me the check involved in this case for a sack of bran and took the difference between the value of the bran and the face of the check in cash. Oscar Phillips, the defendant here, is the person who ordered the baby chicks, and who later purchased the bran with the check purported to be signed by D. D. Walker."

On cross-examination the following questions were propounded to the witness, and he gave the following answers:

"Q. Mr. Wegener, did this man Oscar Phillips, the defendant, endorse this check in your presence? A. I think he did; yes, sir, I think he did. Q. What is your usual custom as to requiring endorsements on checks? Mr. Hatcher: That is objected to as improper, irrelevant, and immaterial. The Court: Sustained. Mr. Hatcher: Comes now the defendant and moves that the testimony about

174

thinking this man endorsed the check be stricken from the record. The Court: Oh, yes, of course, what he thinks is not competent. What he thinks is not competent evidence. Q. What is your judgment about it? Mr. Hatcher: We object to him giving his judgment. The Court: Overruled as to what his best judgment is. Q. Now you say, first you testified a while ago that you think and now you testify that it is your best judgment, * * * A. Yes, sir. Q. That he endorsed the check on the scales? A. Yes, sir. Q. And yet you were right there, were you not? A. Yes, sir. Q. And you have come down here today to try this man, as the main prosecuting witness, on the proposition that he endorsed the check, have you not? A. Not on the endorsement of that check. Q. That is what you are trying to testify to? A. I am testifying that to the best of my judgment he endorsed it on my scales. Q. And you expect this jury to believe that testimony that you are giving that he endorsed it? A. I am pretty sure he did. Q. You are pretty sure? A. Yes, sir. Q. You don't want the jury to believe you saw that man endorse it, do you? A. Yes, sir. Q. That is what you want them to believe? Then why don't you testify to it? A. To the best of my judgment I saw him do it."

Wegener further stated when the defendant placed the order for the baby chicks he gave his name as R. J. Sims. "The check was turned down by the Tuttle Bank, and I went over and took it up; the next time I saw the defendant after he passed the check was here in jail."

D. D. Walker, testifying for the state, stated:

"I have resided at Tuttle for more than eleven years; during the month of April, 1936, I carried an account with the Bank of Tuttle; have carried an account with the bank for about 11 years; me and my wife are the only ones authorized to draw on that account; I did not authorize anyone to draw the check on the bank that is involved in this case; I have never written a check to anyone by the name of R. J. Sims. The check was written without my consent."

Mrs. D. D. Walker, testifying for the state, stated she and her husband both drew on their account. The check was presented to her and she examined it and stated it was not her signature; she had never written a check for anyone named R. J. Sims, and signed it on her husband's account.

"When I drew a check I signed it D. D. Walker. The signature on this check is not my signature. I know the defendant, Oscar Phillips, have known him for about four years, he worked for my husband a short while a year ago last fall; I do not know whether he paid him by check or cash."

D. D. Walker was called for further examination and stated the defendant worked for him one time for a day or two.

"I usually pay all my bills by check, I seldom pay cash; I don't know whether I paid the defendant for his work in cash or with a check."

Floyd Kimball, testifying for the state, stated:

"I am engaged in the banking business in Tuttle, Okla.; I am cashier of the bank; D. D. Walker is one of our customers; in my judgment the check purported to be made payable to R. J. Sims, and endorsed by R. J. Sims, purported to be signed by D. D. Walker, is not the signature of D. D. Walker."

The foregoing is the substance of the testimony introduced by the state. When the state rested, the defendant demurred to the evidence for the reason that the evidence is wholly insufficient to show that a public offense has been committed against the state of Oklahoma by the defendant, Oscar Phillips, which demurrer was overruled and exceptions saved.

Mrs. J. D. Phillips, testifying for the defendant, stated she lived at Tuttle, Okla., was the mother of Oscar Phillips:

"He is about 50 years old, single, and his occupation that of a carpenter. His father died last year. He is a good worker and helps make me a living."

Oscar Phillips, testifying in his own behalf, stated:

"I am the defendant in this case; have made Tuttle my home for the last four and a half years; I was born in Cass County, Texas; have lived in Oklahoma since 1907; I was away part of the time, but that is my home; my father died and I live with my mother; I am a single man, have never been married. Have never been in any trouble until this came up. I gave the check to Mr. Wegener; the date of the check is the date as well as I remember, I don't remember exactly; I delivered the check to Mr. Wegener at his elevator in Minco.

"I did not write the name of R. J. Sims on the back of the check, I did not write any number on the check, nor did I sign the name of D. D. Walker to the check. I had been to El Reno and stayed two days, came back to Minco and was there one night; I started home, I was on foot; I came by bus from El Reno to Minco; I had to get off there or go around by Chickasha, and it was not far from Minco home, eight miles, that is the reason I stopped at Minco; I was trying to catch a ride to Tuttle, and ran across a man in an old '28 model Chevrolet sedan; he had his wife and two children with him and had a flat; the man said if I was not in a hurry I could go with him; I told him I believed I would get a cup of coffee while I was waiting, and I did; when I came back to the highway the man handed me the check and asked me if I minded cashing it; I looked at it and asked if it was the D. D. Walker who lived in my neighborhood, and asked him where he lived and he said south of Minco; I started across to a grocery store and he told me if I did not mind to go down to the elevator and cash it, that he wanted some chickens and a sack of bran. I took the check down

to Mr. Wegener and asked him if it was good, and he said it ought to be. I told him he was the only man I knew of that was making any money. He knew me, but had forgotten my name; he called me George Cunningham, and I told him I was Phillips, and he then remembered me personally. I had bought chickens from him at different times for father and mother; and chicken medicine.

"I told him I did not know Sims, I took it for granted he knew Sims when he said the check was good; I did not know there was anything wrong with the check or I would not have taken it to him; I got one sack of bran and told Mr. Wegener to put the sack of bran on the platform, and helped him put it out on the platform, as Mr. Wegener might be closed when the man returned; Mr. Wegener gave me the difference in the price of the sack of bran and the amount of the check in cash, and I took it back and gave it to the man who gave me the check. The man was a short dark complectioned man about 35 years of age; I rode with him to Tuttle. The man claimed to live south of Tuttle. Since I was arrested I have asked several different parties and I have never seen anyone who knew him; I rode with this man to Tuttle, and got out on Second street; I did not know anyone by the name of R. J. Sims; I did not go into the Wegener place of business and make an order for baby chicks before I presented the check to him; I ordered the chickens the same day I cashed the check for this man Sims, the same time I presented the check."

On cross-examination the defendant stated that when he presented the check to Mr. Wegener the name of R. J. Sims was indorsed on the back of the check. The defendant was then asked to write Oscar Phillips, R. J. Sims, the Bank of Tuttle, and six, which he did, and the writing was introduced in evidence and compared with the check purported to be signed by D. D. Walker.

"I could not say when those baby chicks were to be delivered that I ordered that time; this man told me to

order them for his wife, and I did just what he asked me to do. It was none of my business why the man did not go by and get the sack of bran; I just rode to Tuttle; I helped Mr. Wegener put the sack of bran on the platform; I never gave it a thought as to why the man did not drive by and get the sack of bran; I met this man between the car and the cafe where I got the coffee, in the middle of the street, he handed me the check and asked me if I minded cashing it for him; I looked at it and asked him if it was the D. D. Walker out in my neighborhood; I may have seen Walker's signature, but I don't remember it; I had never heard of Troy Jarman in my life and R. J. Sims was a heavy set man; I have asked several different parties, that is all I could do, if they knew a man named R. J. Sims; if I knew who R. J. Sims was I sure would tell the jury; I didn't know the check wasn't any good when I took it to Mr. Wegener. I heard Mr. Wegener testify in this preliminary trial about the baby chicks I had ordered; I do not think I gave any date at that time; I am pretty sure he said it was the same date I cashed the check; I can read and write, I have not gone to school very much, I finished the eighth grade. I never carried an account in the Bank of Tuttle. The day I was in Minco I had money, about $16 or $18 in my pocket."

The foregoing is the substance of the testimony offered by the defendant.

A number of witnesses testified to the defendant's previous good character, and that they had never heard anything against him until this charge was filed.

At the close of all the testimony the defendant requested the court to instruct the jury to return a verdict of not guilty, for the reason there is no substantial evidence to show that the defendant had committed an offense against the laws of the state of Oklahoma, which was overruled and the defendant duly excepted.

The defendant has assigned six errors alleged to have been committed by the trial court upon which he relies

for a reversal. Section 2125, O. S. 1931 (21 Okla. St. Ann. § 1577), is the section under which the defendant was tried and sentenced, which section reads as follows:

"Every person who sells, exchanges or delivers for any consideration any forged or counterfeited promissory note, check, bill, draft, or other evidence of debt, or engagement for the payment of money absolutely, or upon any contingency, knowing the same to be forged or counterfeited, with intent to have the same uttered or passed, or who offers any such note or other instrument for sale, exchange or delivery for any consideration, with the like knowledge and intent, or who receives any such note or other instrument upon a sale, exchange or delivery for any consideration with the like knowledge and intent, is guilty of forgery in the second degree."

The defendant has argued at length that the court erred in the admission of testimony over his objection when he permitted the prosecuting witness Wegener to testify "that my best judgment is the defendant endorsed the check on my platform scales."

It is insisted by the defendant that the court, in permitting the witness to state in his best judgment the defendant indorsed the name of R. J. Sims on the check at his scales, was prejudicial to the rights of the defendant. Let us review briefly the statement of the defendant as to how he happened to be in Minco that evening and his accidental meeting with what seems to be a mythical man, who had a flat on his car, and who told the defendant if he would wait he could ride to Tuttle with him in his car.

Next, the defendant says he left the man fixing the flat and went to a place to get a cup of coffee, as he had the headache; as he returned the man met him in the street and asked him to get this $6.50 check purported to be indorsed by R. J. Sims cashed, and when he started

to get it cashed at some store the man asked him to take the check to Mr. Wegener, and asked him to get a sack of bran. The defendant admits he took the check to Mr. Wegener, who cashed the check for him; that he got a sack of bran and put it out on the platform for fear Mr. Wegener would be closed when the man came to get the bran.

The defendant further states he took the money, the difference between the price of the sack of bran and the amount of the check, and delivered it to the man where he was fixing the flat, and then rode to Tuttle with him.

Mr. Wegener testified some days prior to the time he came to get the check cashed the defendant came and put in an order for some baby chicks, in the name of R. J. Sims. The defendant denies this, and says he put in an order for this R. J. Sims the day he got the check cashed. The jury evidently did not believe the defendant's testimony, and it is not reasonable, and we do not believe any unbiased, disinterested person would believe such a statement as the defendant gave.

The check was introduced in evidence, and the defendant was then asked to write the name R. J. Sims, the words Oscar, six, and Tuttle on a slip of paper which was introduced in evidence. A comparison of the letter "r" in the words Walker and Oscar, and the last letter "s" in the word Sims, shows that the formation of the letters on the slip of paper where the defendant had written them are identical, and any one familiar with handwriting would be compelled to say they were written by one and the same person.

Many authorities are cited by the defendant to show that the court erred in permitting the witness Wegener to give his best judgment as to the defendant indorsing

the name of R. J. Sims on the back of the check at his scales, but a careful examination of these authorities shows they relate to a different statement of facts, and not to the question of handwriting on a check.

It is further shown by the record that this defendant is one and the same person who came to the place of business of the prosecuting witness several days before he presented the check to be cashed, and put in an order for some baby chicks in the name of R. J. Sims. The defendant says he could not find R. J. Sims after he was arrested; that Sims told him he lived south of Tuttle. The jury by its verdict did not believe the defendant's testimony.

Section 3206, O. S. 1931 (22 Okla. St. Ann. § 1068), is as follows:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

As shown by the record, the testimony clearly shows the defendant in this case presented the check to the prosecuting witness to cash, and either indorsed it in the presence of the prosecuting witness, or wrote the name of R. J. Sims on the check before it was presented by the defendant. Every circumstance surrounding the action of the defendant, and the presentation of the check to the prosecuting witness to be cashed instead of taking it to some of the stores, conclusively shows that the de-

fendant knew the check was a forgery and that he waited until late in the afternoon or evening to present the same to Mr. Wegener to have it cashed; and the circumstances further indicate that the defendant went to the prosecuting witness, Wegener, to cash the check for the reason he had heretofore placed the order for the chicks with the prosecuting witness to assist him in securing cash on the check. Not one line of evidence, or one circumstance, tends to show the defendant acted honestly with the prosecuting witness, or that he believed the check was a valid check.

"Where a defendant is convicted and appeals to this court, the judgment should not be set aside or a new trial granted on account of the improper admission of evidence unless this court from an examination of the entire record is of the opinion that the error complained of has probably resulted in a miscarriage of justice, or that it constitutes a substantial violation of a constitutional or statutory right." Foreman v. State, 38 Okla. Cr. 50, 259 Pac. 176; Mayse v. State, 38 Okla. Cr. 144, 259 Pac. 277.

There is nothing in the record to show that the admission of the testimony complained of resulted in a miscarriage of justice, or that it resulted in a violation of the constitutional or statutory right of the defendant.

The man he claims delivered the check to him was a stranger whom he had never seen before and has never seen since that evening. It does not stand to reason, and the defendant could not expect honest jurors to release him from the forgery charge on such unreasonable, unsatisfactory, and false testimony as shown by the record.

In Tillery v. State, 23 Okla. Cr. 226, 214 Pac. 198, in the second paragraph of the syllabus, this court stated:

"When the sufficiency of the evidence is challenged, and the evidence as a whole does not satisfactorily or con-

clusively convince the appellate court of the guilt of the accused, the verdict will not be set aside on the ground of insufficiency of the evidence where, as in this case, there is some substantial evidence tending to support the verdict. The weight of the testimony and the credibility of the witnesses is for the jury." Taylor v. State, 21 Okla. Cr. 351, 207 Pac. 746.

The jury is the exclusive judge of the weight of the evidence, and if there is a clear conflict in the evidence, or it is such that different inferences can properly be drawn from it, this determination will not be interfered with unless it is clearly against the weight of the evidence or it appears to have been influenced by passion or prejudice. Choate v. State, 37 Okla. Cr. 314, 258 Pac. 360; Clemmer v. State, 56 Okla. Cr. 354, 40 P. 2d 37; Fred Houston v. State, 63 Okla. Cr. 49, 72 P. 2d 526; A. G. Goodnight v. State, 62 Okla. Cr. 382, 71 P. 2d 789; and John Coppage v. State, 62 Okla. Cr. 325, 71 P. 2d 509.

There is nothing in the record to show that the verdict of the jury in this case is against the weight of the evidence, nor is there anything in the record to show that the jury was influenced by passion or prejudice. The evidence is sufficient to sustain the judgment.

The instructions of the court taken in their entirety correctly advised the jury as to the law applicable to the facts. The court did not err in permitting the prosecuting witness to tell all the facts and circumstances leading up to the cashing of the check, and to state in his best judgment the defendant indorsed the check at his scales. The check was indorsed R. J. Sims, and the defendant gave his name a few days prior to the day he presented the check to the prosecuting witness as R. J. Sims, and the witness made a record of it.

The court did not err in overruling the demurrer of the defendant to the state's evidence or denying his motion for an instructed verdict.

The defendant was fortunate he did not get a more severe punishment imposed on him, after the jury had returned a verdict of guilty. He was accorded a fair trial. There are no errors in the record warranting a reversal.

The judgment is affirmed.

DOYLE and BAREFOOT, JJ., concur.