## HARRY SPANN v. STATE.

No. A—9626. June 6, 1940.

(103 P. 2d 389.)

Brunson & Brunson, of Ada, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. An information was filed in the district court of Pontotoc county on April 10, 1937, charging Frank Campbell, J. C. Campbell, and Harry Spann with the crime of burglary in the second degree, and of the crime of the second and subsequent offense as to Harry Spann; a severance was granted; the defendant, Harry Spann, was tried, convicted of the offense of burglary in

the second degree, but the punishment was left to the court. Thereupon the district court sentenced the defendant to five years in the state penitentiary, and he has appealed to this court.

The principal considerations relied upon by the defendant for reversal of this case are:

(1) The evidence is wholly insufficient to support a verdict of guilty.

(2) Error of the court in admitting evidence pertaining to the prior conviction of the defendant on a felony charge and submitting said issue of second and subsequent offense to the jury for the reason it places the defendant in jeopardy twice for the same offense.

In considering the first question it will be necessary to give a summary of the evidence introduced by the state.

J. J. Shields testified he was superintendent of a quarry owned and operated by the Oklahoma Portland Cement Company at Lawrence, Okla.; that he had known the defendant for about 16 years; that on the 13th day of October, 1936, the cement company had about 16,000 pounds of powder and explosives stored in a magazine, which was a brick building without windows but which had one steel door with a lock; and the building was surrounded by a fence which had a double lock on the gate; that on October 15th he was informed that the magazine had been entered; and he drove over to that place, found the gate was cut, the door was cut, and the lock was broken. There were several cases of explosives missing. These explosives were in the magazine on the 13th; and when he went there on the 15th they were gone. Some of the explosives were shipped from McAlester and some came from the factory at Joplin. After the powder was put in the magazine on the 13th and before it was taken on the 15th, the witness

saw the defendant come into the shop. The defendant stood around a minute and walked on up the railroad track in a northwesterly direction. The containers the powder was in had serial numbers on them, and a record was made of it; and later they got 53 cases back from the sheriff's office. The magazine from which the powder was taken was in Pontotoc county, Okla.

Sam Robinson testified that he lived in Lawrence and worked for the cement company. His testimony as to the location of the magazine, the quarry, and the company's property in general is the same as Shields'. He went with Shields to the magazine after the magazine was reported broken into. The powder was missing and the locks were gone. A lot of the dynamite that was taken were sticks five inches by ten inches which were a special order for this particular company.

R. L. Clotz testified that he was the sales manager for the Hercules Powder Company for all the state of Oklahoma except Ottawa county, and had been for three years; that they sold powder of the dimensions of five inches by ten inches to the cement company, who were the only users of this powder in the Southwest. That they only manufactured that powder on special orders. He knew the serial numbers of the powder sold to the company, and identified the box before him as the box of his company in which a part of the explosives was shipped to the cement company at Ada.

Sterling Price testified he was employed by the cement company as timekeeper. Much of his testimony is the same as that of Robinson and Shields. He described and identified the 53 cases which had been recovered by the company from a truck in the custody of Roy Keller, chief of police.

Wayne Vickers testified that in 1937 he was working for the Ada police department; that on January 14th, he, Roy Keller, and Quinton Blake drove south of Fitts Town to the top of a mountain. Acting upon a tip which they had received that the stolen explosives would be brought along that road on a truck, they waited at that spot until the truck came by. They stopped the truck; and Frank Campbell, J. C. Campbell, and the defendant, Harry Spann, were in the truck. The dynamite which was identified as that stolen from the cement company was on the truck. Frank Campbell was driving the truck; the defendant was sitting in the middle next to the driver. They brought the truck and the dynamite back to Ada, and put the defendant and Frank Campbell in jail.

The testimony of two witnesses which was taken in the preliminary hearing was introduced in evidence by the state.

Carl Spann, son of the defendant, was absent at the time of the trial in the district court, and a transcript of his testimony given at the preliminary hearing was read at the trial. He testified that he remembered receiving information about his father being arrested, and that was "last Tuesday night." He saw his father in town Tuesday; the witness owned the car and took his father out to Frank Campbell's; did not find Frank at home; then they drove to Mr. Campbell's father's place, and "he came out to the car and on to town with us." He took his father out to Ed Barnes' place; they came back to town, and later took his father and Frank Campbell to Barnes' place about dark.

"When we got there, Dad got out of the car and went to see Ed. When we left there, I drove a truck; and Frank was in my car. We drove back around to where Mr. Campbell lives. I sat in my car for over an hour; Frank and Dad left with the truck; I don't know what they were

going after. I brought Ed Barnes back to town. When I left, there were three in the truck and they were coming on towards town."

Jim Carney testified at the preliminary hearing that along about Tuesday evening he was looking for a cow near the home of W. W. Campbell, and that right on the road by the bridge a truck was stopped. The motor was running. He saw three individuals there and recognized J. C. Campbell's voice.

This witness' testimony and that of Carl Spann connects the defendant and Campbell with being together in Ed Barnes' truck. This was the truck in which Campbell and the defendant were riding with the explosives at the time of their arrest.

Della Bedford testified that she was the court clerk of Pontotoc county. She testified as to the previous conviction of the defendant and identified the information, the verdict of the jury, the judgment and sentence of the court, and the mandate of the Criminal Court of Appeals wherein the judgment was affirmed on appeal. These instruments were all introduced in evidence.

The defendant took the witness stand and denied breaking into the magazine. He admitted getting the truck from Ed Barnes, but stated that he did so because Frank Campbell had asked him if he knew where he could sell some powder; and that he had found a purchaser for the powder and rented the truck from Ed Barnes to haul the powder, which Frank Campbell said he had, to the purchaser. That he was not at the cement company's property at Lawrence on October 13th as testified to by the state's witnesses; but that he, on October 12th, had gone to the home of Bert Poindexter, southeast of Stringtown in Atoka county, and had stayed there until Saturday

evening, October 17th. In support of his alibi, the defendant introduced the testimony of two witnesses who corroborated the defendant's testimony that he was at the home of Bert Poindexter from Monday, October 12th, to Saturday, October 17th.

In rebuttal the state introduced the evidence of three witnesses who testified that they saw Harry Spann at the shop building of the cement company on October 13th or 14th, which was about the time the powder magazine was burglarized.

After considering this record, we find the following undisputed facts proven by the state:

(1) The locks on the powder magazine were broken, the magazine entered, and a large quantity of explosives taken.

(2) These explosives were later recovered in the possession of the defendant Spann, J. C. Campbell, and Frank Campbell.

(3) The truck in which the explosives were being hauled had been rented by the defendant from Ed Barnes.

When you consider these undisputed facts which have been proven, together with the state's proof that the defendant was there on the ground near the quarry on the day before the night, or at the most two days before the night, this crime was committed, it is inconceivable that a jury of fair-minded citizens could have failed to find the defendant guilty under the circumstances.

This court has many times had to consider appeals in cases where the conviction was obtained on circumstantial evidence. We have consistently followed the rule that where the evidence, together with reasonable and logical inferences and deductions to be drawn therefrom, is suf-

ficient to convince the jury beyond a reasonable doubt of the guilt of the defendant, and the facts and circumstances upon which the conviction rests are consistent with and point to the guilt of the defendant and are inconsistent with any other reasonable hypothesis except the guilt of the defendant, this court will not disturb the verdict on account of the insufficiency of the evidence. Halbert v. State, 35 Okla. Cr. 329, 250 P. 436; Ex parte Jefferies, 7 Okla. Cr. 544, 124 P. 924, 41 L. R. A., N. S., 749; Pickett v. State, 35 Okla. Cr. 60, 248 P. 352; Hensley v. State, 69 Okla. Cr. 199, 101 P. 2d 279; Goodnight v. State, 62 Okla. Cr. 382, 71 P. 2d 789.

In Ramey v. State, 69 Okla. Cr. 257, 101 P. 2d 856, 859, the court stated:

"If there is a conflict in the evidence, or different inference may be drawn therefrom, it is the province of the jury to weigh the evidence and determine the facts; and their determination should not be interfered with unless it appears that such determination was not sustained by sufficient evidence, or was influenced in some way by passion or prejudice.

"It is no more the province of an appellate court than of the court of original jurisdiction to determine controverted questions of fact arising upon conflicting evidence. Neither can lawfully usurp the appropriate function of the other, and neither can substitute its own judgment for that of the jury, where the facts are reasonably capable of diverse or opposing inferences.

"The truthfulness of an explanation of the possession of stolen property, although not contradicted, must be determined by the jury. Chesser v. State, 63 Okla. Cr. 84, 73 P. 2d 191."

There is no merit to the contention of the defendant that the court erred in allowing the introduction of proof pertaining to the prior conviction of the defendant.

The Legislature, by the provisions of section 1817, O. S. 1931, 21 Okla. St. Ann. § 51, did not create or define a new or independent crime, but said statute describes circumstances wherein one found guilty of a specific crime may be more severely penalized because of his previous conviction. "Habitual criminality" is a state and not a crime. Various attacks have been made on this statute; the defendants insisting that it conflicted with various sections of the state and federal Constitutions. See Tucker v. State, 14 Okla. Cr. 54, 167 P. 637; Fowler v. State, 14 Okla. Cr. 316, 170 P. 917; Wright v. State, 16 Okla. Cr. 458, 184 P. 158; Rogers v. State, 34 Okla. Cr. 15, 244 P. 461; Martin v. State, 30 Okla. Cr. 49, 234 P. 795; Ex parte Weaver, 60 Okla. Cr. 290, 64 P. 2d 925; Ex parte Wray, 61 Okla. Cr. 162, 66 P. 2d 965.

Laws of this character are not of recent origin. Statutes of similar import have been uniformly upheld by the courts wherever enacted. As was said by the Supreme Court of the United States in Moore v. State of Missouri, 159 U. S. 673, 16 S. Ct. 179, 181, 40 L. Ed. 301:

"Similar provisions have been contained in state statutes for many years, and they have been uniformly sustained by the courts."

The law complained of is a valid, existing penal provision and does not conflict in any way with any of the constitutional guaranties possessed by the accused.

The procedure followed by the state in this case to prove the prior conviction has been approved many times by this court. Files v. State, 16 Okla. Cr. 363, 182 P. 911; Bassett v. State, 42 Okla. Cr. 126, 274 P. 893; Smiley v. State, 51 Okla. Cr. 364, 1 P. 2d 829; Pitzer v. State, 69 Okla. Cr. 363, 103 P. 2d 109.

However, the defendant has no cause to complain here because, in spite of the fact that the proof of the prior conviction was thoroughly established and even admitted by the defendant on his cross-examination, still the jury sought to ignore his prior conviction and only rendered a verdict of guilty of the offense of burglary in the second degree and left the punishment to the court. The court thereupon sentenced the defendant to serve a term of five years in the state penitentiary. If the defendant had been found guilty of burglary in the second degree and they had found that the same was a "second offense" as defined to them in the court's instructions, the minimum punishment which could have been imposed would have been ten years in the state penitentiary. The defendant is very fortunate that he received only five years instead of ten years, as the evidence in this case would have warranted a verdict of guilty of burglary in the second degree, the same being a "second offense."

The defendant urges several secondary propositions concerning the admission of testimony and attacks on the information, but all of these contentions are directed to the two propositions hereinabove discussed, to wit, insufficiency of the evidence and error of the court in submitting proof as to a prior conviction.

The information herein charged an offense under the habitual criminal statute, and the demurrer thereto was properly overruled. The instructions fairly presented all the issues to the jury, including an instruction on circumstantial evidence, alibi, and the second offense statute.

We find that no material error has been committed, and the judgment is accordingly affirmed.

DOYLE, P. J., and BAREFOOT, J., concur.