## JACK SADLER v. STATE.

No. A-10630.  April 2, 1947.
(179 P. 2d 479.)

98

R. H. Morgan, of Watonga, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

JONES, J.  The defendant, Jack Sadler was charged by information filed in the district court of Blaine county with the crime of grand larceny, was tried, convicted and sentenced to serve one year in the State Penitentiary and has appealed.

The information charged the defendant with the theft of an automatic .22 Winchester rifle on March 6, 1944, from one George Swayden.

Counsel for defendant presented two assignments of error:

1.  The evidence is insufficient to show that the crime of larceny has been committed.

2. If the crime of larceny had been committed, it only amounted to petit larceny. These assignments of error will be considered together.

George Swayden testified that he was engaged in the general merchandising business in the town of Longdale, Okla. That he lived in a room in the back of his store building. The gun in question belonged to his son, Kelly Swayden, who was in the Army and it was kept hanging on a peg with three other guns in the room where the witness lived. That his daughter, Louise Swayden, had charge of the management of the store; that on the night of March 6, 1944, his daughter left the store building to go to a basketball game; that witness was acquainted with defendant; that defendant came into the store a few minutes after his daughter had gone and stayed about 25 or 30 minutes; that defendant gave him a drink or two of whisky while he was there. The next morning he noticed that the .22 rifle was missing and immediately notified the sheriff. He did not give any one permission to take the rifle and it was taken without his knowledge or consent. A few days after the sheriff brought a gun to him which he identified as the one which had been stolen. On cross-examination, the witness denied having sold the gun and 100 pounds of sugar to the defendant for $25.

Louise Swayden testified that at the time her brother went into the Army, he left the automatic rifle with her father and it was kept in the back of the store in her father's room; that the gun was hanging on a peg in the room on March 6th, but that the next morning, March 7, 1944, it was missing.

W. W. Mitchell testified that he had been the proprietor of a hardware and sporting goods store for about seven years. That in 1942, he sold a .22 Winchester automatic,

model 74 gun, to Kelly Swayden. The witness testified that he had had eight years' experience in buying and selling used guns, and that he was familiar with the fair market value of guns and rifles on March 6, 1944. The witness testified that he was acquainted with the condition of the rifle in question on March 6, 1944. That is was in good shape and that in his opinion, it would easily bring on the market the sum of $25. That he made an effort to buy the gun from George Swayden shortly before it was taken from the store but was refused. On cross-examination, the witness identified an exhibit as the sales price list of the Winchester Arms Company and stated that the minimum retail price according to the list for a gun similar to the one involved was $18.45. That the sum of $18.45 was the minium price fixed by the Fair Trade Act, 78 O. S. 1941 § 41 et seq., but that there was no ceiling price that could be charged. That the catalog price as shown was for the year 1941, but that no new guns were furnished to dealers after 1942. The witness was shown a catalog of Shapleigh's Hardware Company and he identified a similar rifle with the description set forth in the catalog which showed the retail price at $29.10 for 1942. On redirect examination, the witness testified that a second hand gun in good condition, on March 6, 1944, would bring more money than a new gun because there was no ceiling price on used guns.

Raymond Bell, a colored man, who was engaged in business in Watonga, testified that the defendant brought a rifle to him on the last Sunday in August, 1944. That he gave the defendant $10 for the gun with the agreement that the defendant could pay him $12.50 on the first of the next month and take back the rifle. That Sheriff Scott saw the gun in his place of business a few days after he had obtained it from defendant and the witness informed the sheriff where he had obtained the rifle.

R. C. Scott testified that he was the sheriff of Blaine county. That on March 7, 1944, he was informed by George Swayden that a Winchester automatic rifle had been stolen from his store the night before. That in September, 1944, he had occasion to be in the place of business of Raymond Bell in Watonga and there saw a rifle similar to the one which had been allegedly stolen from Swayden. That he talked to Bell about the rifle at that time and took possession of it. That the rifle he got from Bell was the one identified as State's Exhibit A. That witness had bought and sold several guns and was familiar with the fair market value of the rifle in question on March 6, 1944, and that in his opinion the fair market value of said rifle on that date was $30. The witness further testified that a few days after he had obtained the rifle from Bell, he talked to defendant on the street at Watonga and defendant told him that he had purchased the gun from George Swayden, together with a sack of sugar for $25. That the defendant told him in that conversation that the gun which the sheriff got from Bell was the same gun he got from George Swayden.

Raymond Bell, being recalled, testified that at the time defendant brought the gun to his place, defendant told him that the gun belonged to his son who was in the Army.

M. R. Haws testified on behalf of defendant that he had been engaged in the hardware business at Watogna for about 25 years. That he had a contract with the Winchester Arms Company, and introduced a price list of Winchester's setting forth fair trade prices of Winchester guns. That the gun in question was listed in the contract for the year 1941, at the price of $18.45; that the fair market value of the gun in question on March 6, 1944, was

about $15. On cross-examination, the witness admitted that used guns in good condition were selling in March, 1944, for more than they sold for when new.

Lavern Albin testified that he had been engaged in the hardware business in Watonga since 1932. That the fair market value of the gun in question on March 6, 1944, was about $15.

Walter O'Neal testified that he was present with the defendant on the night of March 6, 1944, when defendant bought some sugar off of Swayden and that he helped to carry out the sugar. That he did not see the gun taken out to the pickup truck, but that Sadler gave Swayden $25 for a gun and sack of sugar. Witness admitted that he and the defendant had been partners in the whisky business and that both had entered a plea of guilty in the Federal court to the charge of making whisky.

The defendant testified in his own behalf that he had been convicted for selling whisky to minors, and also had been convicted in Federal court on a plea of guilty to making whisky in 1944. That he went to Swayden's store on March 6, 1944, to buy some sugar and Swayden told him to wait until after the girl went home that night. That he bought the sugar from the defendant for $10 and two gallons of whisky, and that night he gave the defendant $15 for the gun. That George Swayden was intoxicated at the time the deal was made.

The fact that the rifle might have been purchased new in 1942 for $20, or less, was not the controlling factor in determining its fair reasonable market value at the time it was allegedly stolen. The advent of the war increased the demand for firearms of all kinds and with the increased demand came a corresponding increase in their value. The

witnesses both for the state and the defendant discussed this angle at length in their testimony and all agreed that a good used gun had more value in 1944 than a new gun had in 1941 or 1942. The witnesses for the state fixed the value of the gun in excess of $20, which would have been sufficient to constitute the act of taking it as grand larceny. The witnesses for defendant fixed the value of the gun at about $15, but this conflict in the testimony raised an issue for the determination of the jury.

In he case of Roberts v. State, 82 Okla. Cr. 75, 166 P. 2d 111, 112, this court stated:

"In considering the sufficiency of the evidence, the function of this court is limited to ascertaining whether there is a basis in the evidence on which the jury can reasonably conclude that accused is guilty as charged."

Where there is a conflict in the evidence or different inferences may be drawn therefrom, it is the province of the jury to weigh the evidence and determine the facts. Landon v. State, 82 Okla. Cr. 336, 166 P. 2d 781. Spann v. State, 69 Okla. Cr. 369, 103 P. 2d 389.

The testimony of George Swayden, if believed by the jury, was sufficient to show that the crime of larceny had been committed, and there is ample evidence in the record from which the jury could reasonably conclude that the fair reasonable market value of the gun at the time it was taken was in excess of $20. There is no showing made nor contention presented that the verdict of the jury was prompted by passion or prejudice.

The judgment and sentence of the district court of Blaine county is affirmed.

BAREFOOT, P. J., and BRETT, J., concur.