## LUTZ v. STATE.

No. A-11266.   Jan. 31, 1951.

(227 P. 2d 692.)

Harry Seaton, Public Defender, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, P J. Plaintiff in error Edward Lutz, defendant below, was charged in the district court of Tulsa county, Oklahoma, by information, with the murder of Leonard Mayfield, allegedly committed on July 17, 1948, in Collinsville, Oklahoma, Tulsa county. The information charged the killing was effected by Lutz by means of shooting Mayfield with a 45 caliber Smith & Wesson pistol. The defendant was tried by a jury, convicted, and his punishment fixed at a term of 10 years in the State Penitentiary. Judgment and sentence was entered on the verdict, from which judgment and sentence this appeal has been perfected.

The case was not briefed either for the defendant as plaintiff in error or by the state. It was assigned for oral argument on June 28, 1950, and stricken at defendant's request, thereafter it was set for oral argument on September 13, 1950, argued by the public defender, and submitted on the record on said last named date. In the petition in error he raises the following contentions:

"1. The said Court erred in overruling the motion of plaintiff for new trial.

"2. Said Court erred in denying plaintiff in error's demurrer to the evidence of the defendant in error.

"3. The Court erred in refusing to sustain plaintiff in error's demurrer at the close of the case, and to enter judgment of acquittal for said plaintiff in error.

"4. That the judgment is contrary to law.

"5. That the judgment is contrary to the evidence.

"6. That the verdict of the jury is excessive, appearing to have been given under the influence of passion and prejudice."

The facts, as contained in the 354 page record, upon which the foregoing assignments are predicated, are substantially as hereinafter set forth  The defendant, an ex-convict, was residing at Collinsville, Oklahoma, on the 17th day of July, 1948, as he had been for some time prior thereto.  His place of residence was in the unoccupied Middleton Hotel, which he occupied in the capacity of a custodian.  About 60 days before the crime herein alleged the defendant, Edward Lutz, met Leonard Mayfield, likewise an ex-convict.  The defendant, Lutz, himself was a 4-time loser. It appeared that for 10 or 12 nights Mayfield occupied sleeping quarters in the hotel with Lutz.  On or about July 12, 1948, Mayfield introduced the defendant, Lutz, to a captain of the penitentiary guard, by the name of Floyd Sellars.  Sellars' mission to the neighborhood of Collinsville was to contact Mayfield in an effort to obtain his aid in ascertaining the whereabouts of George Kimes, an escapee from the penitentiary.  During the 5-day period it appears from the state's case Mayfield, Sellars and Lutz all stayed at the Middleton Hotel at nights and ate at the Miller cafe downstairs.  It appears further from the state's evidence that these parties did some gambling and drinking during the time they were together.  The defendant admitted to Chief of Police Davis and Deputy Sheriff Whisenhunt and the county attorney after the killing that, prior

to the killing, he was paid $36 by Mr. Middleton for work. He said that Mayfield and Sellars beat him out of $26 of said sum in a card game on the night of July 16, 1948. On this night of July 16, 1948, the 3 parties were in Miller's cafe when Miller asked Lutz about a debt of $10 which Lutz allegedly owed him. The record discloses that Sellers paid the obligation amounting to $10 on behalf of Lutz. On the morning of July 17, 1948, Mayfield and Sellars requested a drink of whisky which Lutz provided from a partially filled pint bottle, admonishing Mayfield and Sellars to save him a drink, which he would want after he got back from doing some chores for Mr. Middleton. On his return from doing the chores, the liquor was all gone, and the defendant expressed his dislike and Mayfield drew his knife and threatened Lutz about making something of the incident. The record discloses that Sellars calmed that situation, and nothing came of it at that time. Thereafter Mayfield proceeded to show Sellars how to cheat at cards. Lutz it appears heard this explanation. Shortly thereafter he put on his good clothes and announced he was going to Tulsa to see his sister. It appears this he did do, but thereafter went to a loan office, pawned his watch for $20 and bought a 45 caliber Smith & Wesson pistol and 6 shells, for $15. About 2:30 or 3:00 p. m., in the afternoon, he returned to Collinsville, took Sellars aside and showed him the pistol and pointed in the direction of the room then occupied by Mayfield. Later while Sellars and Mayfield were playing cards on the bed and Mayfield had his back to the door the defendant shot Mayfield from the door, hitting him in the back of the neck. Upon being shot Mayfield turned, threw up his arms, one of which had a bullet hole in it, and said in substance, "don't shoot me again, Ed, you have already killed me". Sellars testified Lutz fired his

second shot, and exclaimed "here is one for your guts, you double crossing son of a bitch". This bullet destroyed about 3/4″ of the apex of Mayfield's heart. The record shows that Sellars ran out the door and down the stairs, and that Lutz turned and fired into the stairway at Sellars. Shortly after his surrender Lutz told Sellars in the presence of other persons "you were marked too the same as Mayfield, but see, I never forget a favor—you did me a favor last night", referring apparently to the payment of the debt he owed the Miller cafe. Such in substance was the state's case.

The defendant's theory of the case was one of self-defense. He testified that Mayfield had tried to persuade him to commit several robberies with him, including a bank job, and Mayfield did not like it because he refused. On the morning of July 17, 1948, the defendant testified, that he and Sellars and Mayfield arose a little before 6:00 a. m., and that Sellars and Mayfield wanted a drink of liquor. The defendant, Lutz, says he procured a bottle for them with about 3 drinks in it. He testified he told them to save him a drink which he would want after he returned from doing his chores for Mr. Middleton. On his return they had drunk it all and there was none left for Lutz. Lutz said he told them he did not like it and Mayfield got his knife and told him, "well, you will like it anyway". He says that Sellars made Mayfield desist and calmed him down. Shortly thereafter he admitted that he left for Tulsa to see his sister about buying him a truck. He admitted after visiting her he went to the Rose Second Hand Store and Loan Office where he pawned his watch for $20 and then paid $15 for a 45 caliber Smith & Wesson pistol. He returned from Tulsa to Collinsville to his quarters and there found Mayfield and Sellars still at the Middleton Hotel. He said in sub-

stance that Mayfield had discovered Sellars' bank account would be good for a $100 check. He explained that both Mayfield and Sellars were drunk. Sellars, he said, was so drunk he looked as though he was asleep with his head in his hands, bent over. Lutz said Mayfield talked to him in the hall about helping him get Sellars to give him a $100 check. Lutz said that Mayfield returned to the room while he was out in the hall just outside the door. He said that Mayfield expected him to come in and participate in the attempt to defraud Sellars, which he did not do. He said Mayfield demanded that he come on in and help him or he would expose his criminal record, which was not generally known in Collinsville. Upon his refusal so to do, he said that Mayfield again pulled his knife and advanced towards him. Then it was that he fired 2 shots as fast as he could. He testified that Sellars ran out the door and down the stairs as fast as he could. He testified that he fired a shot into the stairway to wake Sellars up, and Sellars ran out the door and down the steps. No one was left in the hotel but Mayfield and the defendant. It is pertinent to note that when the officers arrived shortly after the killing the record discloses Mayfield was found lying across the bed on his back. This fact affords strong corroboration of the testimony of Sellars that the defendant first shot Mayfield in the back of the neck, that Mayfield turned, fell back on his back, and raised his arms, one of which had been pierced by a bullet, and pleaded with Lutz not to shoot him again. The defendant Lutz testified that he was not inside the room after the killing, that he did not even look in when the officers placed him under arrest and he took them to the place where he had deposited the pistol. Apparently Mayfield's body was not moved or touched from the time of the killing until

the arrival of the officers. Such in substance is the evidence offered in support of the theory of the state and the defendant. This testimony created a question of fact for the jury. It has been repeatedly held by this court that where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, Criminal Court of Appeals will not interfere with verdict even if there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts. Lowrey v. State, 87 Okla. Cr. 313, 197 P. 2d 637; Sadler v. State, 84 Okla. Cr. 97, 179 P. 2d 479, and numerous other cases to the same effect. The evidence herein though conflicting is sufficient upon which to sustain the verdict of the jury. Certainly, under the conditions herewith presented, the sentence of 10 years in the penitentiary is not excessive. We have searched the record and find nothing sufficient to warrant us in sustaining the defendant's contention that the verdict was the result of passion and prejudice on the part of the jury against the defendant. We have otherwise examined the record in light of the hereinbefore quoted assignments of error and find that in light of the whole record and the clear evidence of guilt of the defendant, the contentions of the defendant in the petition in error are without substantial merit. For the reasons hereinbefore set forth the judgment and sentence is accordingly affirmed.

JONES and POWELL, JJ., concur.