## JOHNSON QUINTON v. STATE.

No. A-1781.     Opinion Filed March 28, 1914.

(139 Pac. 705.)

1.    **HOMICIDE—Motion to Quash Information—Preliminary Hearing.** An unverified motion to quash or set aside an information, on the ground "that there has been no preliminary hearing in said cause before a magistrate," is insufficient to overcome the legal presumption of the regularity of the proceedings, where defendant is held to the district court on a charge of murder, and the transcript of the committing magistrate shows that defendant waived a preliminary examination; and the fact that the county attorney caused the state's witnesses to be sworn and examined after such waiver did not deprive the defendant of any substantial right. The state is not barred from holding a preliminary examination, even though defendant waives his right thereto.

2.    **CONTINUANCE—Grounds—Time for Preparation.** The fact of an agreement by and between the defendant and his attorneys three weeks before trial that said attorneys "should do nothing until the amount of their stipulated fee was paid or arranged" is no legal and sufficient cause for a continuance on the ground of lack of time to prepare for trial.

3.    **HOMICIDE—Manslaughter—Sufficiency of Evidence.** In a prosecution for murder, the evidence is held to support the verdict of manslaughter in the first degree, and that no reversible error was committed on the trial.

*Appeal from District Court, Sequoyah County;*
*John H. Pitchford, Judge.*

Johnson Quinton was convicted of manslaughter in the first degree, and appeals. Affirmed.

*Jess W. Watts* and *James Breedlove,* for plaintiff in error.

*Smith C. Matson,* Asst. Atty. Gen., *T. F. Shackelford,* Co. Atty., and *J. B. Allen,* Asst. Co. Atty., for the State.

DOYLE, J. Plaintiff in error, hereinafter referred to as the defendant, was informed against as having, on the 8th day of December, 1911, in Sequoyah county, without authority of law, feloniously, and with a premeditated design, killed one John Parker.

The record shows that the defendant was arrested on the 9th day of December, 1911, on a warrant issued on a preliminary complaint, and the preliminary examination set for the 18th day of December. On that day the defendant appeared in person and by counsel and signified his desire to waive a preliminary examination. Thereupon the examining magistrate and county attorney caused the state's witnesses to be sworn, and their testimony taken, and the stenographic notes, with a duly certified transcript of the proceedings and order holding the defendant to the district court, were filed with the clerk of said court. The information was filed January 2, 1912. Indorsed thereon were the names of the witnesses who testified at the preliminary hearing. Time to plead was taken, and on the 4th day of January the defendant filed a motion to quash the information, on the ground "that there has been no proper preliminary hearing in said cause before a magistrate of Sequoyah county, Okla.," which motion was overruled; and the defendant refused to further plead. Thereupon the court directed a plea of not guilty, which was entered. January 6th the defendant filed a motion for continuance, which motion was taken under advisement by the court until the 8th day of January, at which time said motion was by the court overruled, and the case was called for trial. On January 10th the jury returned a verdict of manslaughter in the

first degree, and assessed his punishment at imprisonment in the penitentiary for a term of 21 years.

Motions for new trial and in arrest of judgment were duly filed, and on the 22d day of January overruled; thereupon the court pronounced judgment and sentence in accordance with the verdict of the jury.

The evidence shows that the defendant and deceased met in the road and went to the home of the defendant's brother, Dave Quinton, and after dinner they went to Rocky Point schoolhouse, where some men were at work, and remained only a few minutes. They were next seen at the home of Mrs. J. E. Pollard, about two and one-half miles from said schoolhouse, with one Mat McMurtry. The three remained only a short time at Mrs. Pollard's, then left; the defendant leading deceased, who was, at this time, very drunk. They went to the home of one Jerry Pollard, taking three or four drinks between the last-named places, which are about a mile apart. All were in a good humor, and drinking deceased's whisky or alcohol. The three went from Jerry Pollard's to Ambrose Wilcox's house, a distance of about one-fourth of a mile. About 200 yards from the house they stopped, McMurtry leaving, and deceased and the defendant proceeded to the gate. At this time deceased was staggering drunk, and the parties were laughing. McMurtry was away only about five minutes. When he returned the defendant had deceased's revolver, and was sitting by a tree. Deceased was standing leaning against a tree, and something was said about going—deceased remarked that he would not go without his revolver. At this time deceased was too drunk to walk without assistance. Being supported by the defendant and McMurtry, one on either side, they started down the trail, and after going a short distance they met Ambrose Wilcox and Ed. Clark, and the defendant and deceased had a scuffle. Wilcox had a shotgun, and deceased caught hold of same, and defendant jerked him away from the gun; deceased was cursing, and the defendant said to him, "There is a man hold of you now; you will have to cut it out." The defendant then threw the deceased down and held him for a few minutes and let him up. Deceased,

with the bottle in his hand, staggered back towards the defendant; he dropped the bottle, and the defendant told Wilcox to pick it up. The defendant drew the revolver, cocked it, and said: "God damn you, stand back, stand in your tracks." Thereupon "deceased staggered around and acted the fool like a drunk man will." Deceased and the defendant again scuffled, both falling to the ground, the defendant getting astride deceased, who was lying on his back; whereupon deceased, with his hands on the defendant's shoulders, uttered these, his last words, to wit: "You God damn son of a bitch, you aint' game enough to shoot me with my own gun." The defendant held the revolver within a foot of deceased's breast, and fired the fatal shot; death was almost instantaneous. At the report of the pistol, deceased's hands fell to the ground; the defendant got up off of deceased, and demanded the bottle. Witness Wilcox handed him the bottle. The defendant asked witness McMurtry to go with him, saying to witnesses Wilcox and Clark, "Boys, say nothing about this." Thereupon all of the parties left the scene where deceased was lying on his back dead; the defeandant and witness McMurtry going at a rapid pace back by Mrs. J. E. Pollard's, a distance of two miles, from there to the home of one Sam McKinney, where the defendant left McMurtry a short distance from the house, stating that he was going to McKinney's to get more cartridges.

The defendant, as a witness in his own behalf, testified that while McMurtry was gone deceased said, "God damn you, I am going to kill you," and jerked out his gun and drew it on him, and it snapped; that he grabbed the gun and wrenched it out of his hand; that in the final scuffle, when he had him down, deceased "ran his hand down in his pocket like he was going after a knife, and he says, 'You God damn son of a bitch, I am going to kill you,' and then I shot him;" that he had only taken two or three drinks that day.

The first assignment is: "The court erred in overruling the defendant's motion to quash the information." The showing made by the filing of an unverified motion is not sufficient to overcome the legal presumption of the regularity of the pro-

ceedings. The argument is made that, as the record shows, the defendant having waived his right to a preliminary examination, the only object which might materially be to his advantage from such waiver would be to dispense with the taking of the testimony of the state's witnesses, and in the proceeding by the county attorney to have the witnesses sworn and examined after his waiver, he was deprived of this material right.

We know of no rule or principle of law that supports this contention. The county attorney, we think, very properly had the testimony of the state's witnesses taken, regardless of the defendant's waiver.

In *Ponosky v. State,* 8 Okla. Cr. 116, 126 Pac. 451, this court held that "the state is not barred from holding an examination, even though a defendant waives his right thereto."

The second assignment is: "The court erred in overruling the defendant's motion for a continuance." The motion is based on alleged insufficient time to prepare for trial. The affidavits of the defendant and his attorneys of record as attached to the motion alleged that the defendant, a three-quarter blood Cherokee, was without means, and seemingly did not realize the graveness of the charge, or the necessity of prompt action; that, being in jail, the defendant was unable to make satisfactory arrangements with his attorneys; and that no arrangement was made until about a week before the trial.

A motion for continuance on the ground that counsel had not had a reasonable time to prepare for a defense is addressed to the sound discretion of the trial court, and the doctrine established in this state is that only where there is an abuse of the discretion will a reversal be had. The fact of an agreement by and between the defendant and his attorneys three weeks before trial, conditioned that the attorneys "should do nothing until the amount of their stipulated fee was paid or arranged," is no legal or sufficient cause for a continuance on the ground of lack of time to prepare for trial.

The record shows that his counsel of record, Watts & Breedlove, appeared at the preliminary hearing, and that they represented him upon his trial, and the skill and vigor of the defense

as shown by the record refute counsels' argument on this point.

We think that it is not shown that the time was too short, or that the court, in refusing to postpone the trial, abused its discretion.

There are several other assignments of error, which we do not discuss, because we deem them destitute of merit.

We are of opinion that the defendant had a fair and impartial trial, with every right accorded him that the law justifies or requires.

The judgment of the district court of Sequoyah county herein will therefore be affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.