## MAMIE INGRAM v. STATE.

No. A-10883.   July 28, 1948.
(196 P. 2d 534.)

224

Champion, Champion & Wallace, of Ardmore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Mamie Ingram, was charged by the district court of Carter county with the crime of murder, was tried, convicted of manslaughter in the first degree and sentenced to serve four years in the State Penitentiary, and has appealed.

The first proposition presented in the brief of defendant is that the record shows that a preliminary complaint was filed in the justice of peace court of Ulis S. Barnett in Ardmore, but that the preliminary hearing was held in the justice of peace court of Sam Schiff at Healdton, and the record does not show any transfer or change of venue.

The record discloses that a preliminary complaint was filed before Ulis S. Barnett, justice of peace of the city of Ardmore, and a warrant was issued for the arrest of defendant by the said justice of peace on May 23, 1946. There appears on the back of the complaint this notation:

"On the 1 day of June, 1946, Defendant Mamie Ingram appeared with counsel and a preliminary hearing

having been had and it appearing to me that the offense named in the within complaint has been committed and that there is sufficient cause to believe the within named Mamie Ingram guilty thereof, I ordered that she be held to answer the same in District Court and her bond be fixed at $———; ——— having made bond ——— order ———.

"Sam Schiff
"Justice of the Peace."

It is the contention of the counsel for the defendant that the preliminary examination must be held before the justice of the peace in whose court the complaint was filed or the record must affirmatively show that the cause was transferred for preliminary examination to some other magistrate.

At the time of the arraignment of the defendant before the district court of Carter County, a plea of not guilty was entered. No motion to quash nor other pleading was filed which raised the question now urged or presented in any way any alleged defects in the preliminary proceedings.

Counsel does not contend that no preliminary examination was held for the defendant, but base their contention solely upon the fact that the complaint was filed before one justice of peace and the examination held before another justice of the peace, and the record fails to affirmatively show any way in which the second justice of the peace acquired jurisdiction to hold the examination.

A similar question was presented in the recent case of Ex parte Owen, 82 Okla. Cr. 415, 171 P. 2d 868. The syllabus of that case reads as follows:

"The Constitutional provision (Art. 2, § 17, Okla. Const.) that no person shall be prosecuted for a felony

by information without having had a preliminary examination is in the nature of a personal privilege for the benefit of the accused which may be waived by him.

"An information charging a felony need not allege that an accused has had a preliminary examination or has waived it.

"The manner of challenging jurisdiction because no preliminary examination was had is by motion to quash or set aside the information before entering a plea on the merits.

"A preliminary examination may be waived before the committing magistrate or the preliminary examination, and the entire preliminary proceedings may be waived in the trial court and is waived by failure to file motion to quash or set aside as provided by the statute before entering a plea on the merits."

See, also, in this connection the cases of Ex parte Robinson, 56 Okla. Cr. 404, 41 P. 2d 127; Quinton v. State, 10 Okla. Cr. 520, 139 P. 705; Herren v. State, 72 Okla. Cr. 254, 115 P. 2d 258, 259.

In the case of Herren v. State, supra, it is held:

"The entire preliminary proceedings may be waived in the trial court and is waived by failure to file motion to quash or set aside as provided by the statute before entering a plea on the merits.

"After a plea of not guilty is entered upon arraignment in district court without filing a motion to quash the information, the question as to the failure to have a preliminary examination is waived and may not be raised by an objection to the introduction of evidence at the beginning of the trial."

In the body of the opinion it is stated:

"The record is silent as to whether defendant was heard by counsel at the preliminary examination or whether he even had a preliminary hearing. When a record

is silent as to certain proceedings had upon the trial, every presumption of law is in favor of the regularity of the proceedings; and in order for this presumption to be overcome, the contrary must affirmatively appear in the record. Killough v. State, 6 Okla. Cr. 311, 118 P. 620; Henry v. State, 10 Okla. Cr. 369, 136 P. 982, 52 L. R. A., N. S., 113."

It is stated in 22 C. J. S., Criminal Law, § 589:

"In the absence of proof to the contrary, the proceedings of courts properly exercising criminal jurisdiction are presumed to be regular, and the mere failure of their records to show this, does not overcome the presumption. * * *

"In the absence of a showing to the contrary, the law presumes that accused has had a preliminary examination or has waived it, that proceedings leading up to a commitment by a magistrate were regularly conducted, that the magistrate performed the duties imposed on him by law, and that such duties were performed by the magistrate in good faith."

Since the question now presented is raised for the first time on appeal, it is apparent in view of the above authorities that the defendant's position is untenable.

It is next contended that defendant's rights were prejudiced by reason of the refusal of the trial court to grant a continuance upon motion of defendant.

At the time the case was called for trial the record discloses the following proceedings occurred:

"By the Court: What says the state in the case of the State of Oklahoma against Mamie Ingram? By Mr. Williams (county attorney): The state is ready. By Mr. Champion (counsel for defendant): Mrs. Lola Stinnett, I understand has gone to California after she had been subpoenaed. Grady Rhone is not here, he was subpoenaed by the state. By the Court: Did you subpoena

her or did the state? By Mr. Champion (counsel for defendant): Yes, sir, the state subpoenaed her and we have a right to rely on that subpoena. By the Court: Are you making a motion for a continuance? By Mr. Champion (counsel for defendant): Yes, sir, we are going to ask for a continuance. By the Court: Well, the oral motion is overruled. By Mr. Champion (counsel for defendant): Well, will you give us time to prepare a written motion? I thought they would be here until I got to the courthouse. By the Court: We will recess until 9:30 for that purpose. Note by Reporter: (A short recess was had and counsel for the defendant discussed further the question of a continuance with the court in chambers out of the presence of the jury panel and the court overruled the motion for a continuance, which was excepted to by the defendant. Thereafter at 9:30 a. m., all parties being present and a jury being in waiting, a jury of twelve men were duly and legally selected to try this case.)"

There is no question but that the two absent witnesses were present at the time the fatal shooting occurred. They were a sister and nephew of the defendant. The undisputed facts were that the defendant, Mamie Ingram, shot her brother-in-law, Bud Lankford, with a 38 caliber Luger pistol in the home of the defendant in the presence of the wife of the deceased, who was also a sister of the defendant, and who testified in her behalf at the trial, and that there were also present, Lola Stinnett, a sister of the defendant, and Grady Rhone, a soldier who was a nephew of the defendant. No subpoenas were issued for these two witnesses by the defendant. It is apparent from what counsel for defendant said that he knew that neither would be present at the trial and if he had desired to have properly presented this question, he should have prepared a motion in writing setting forth the substance of the testimony which would have been given by the absent witnesses and a further showing of

the diligence which had been used to obtain their presence at the trial, and whether or not the witnesses' presence could be procured at a future trial if the cause was continued.

Counsel who now represent the defendant were employed to perfect her appeal and were not the counsel who represented her at the time of the trial. It is their contention that irrespective of the failure of counsel who appeared at the trial to file a proper motion for continuance with supporting affidavits, it was the trial court's duty on his own motion to continue the cause when it became evident that the two absent witnesses were present at the time of the fatal shooting and that their testimony was material to a proper determination of the cause.

We have given this question a great amount of attention and have carefully considered the record to determine in our own mind whether the cause should be reversed and a new trial granted in order to fully protect the rights of the defendant so that justice could be administered fairly.

At the time the oral motion for continuance was presented, the trial court, of course, did not know just what the evidence would disclose concerning the homicide.

At the time the motion for continuance was overruled, there was nothing in the record to call the court's attention to the fact that the absent witnesses were eyewitnesses to the homicide. There is very little dispute about the facts. The deceased, an oilfield worker, lived with his wife about four miles from the defendant. A few months before the tragedy occurred the wife of the deceased and the defendant had gone to California over the objection of the deceased and had spent five months

there together. The defendant, a single woman, lived in a small three room house. On the day of the homicide, the deceased had gone squirrel hunting and had been drinking heavily. The wife of the deceased, together with another sister, Mrs. Stinnett, and a soldier, had gone to the home of the defendant where they had engaged in a party with considerable beer drinking, and also some whisky drinking. When the deceased returned from his squirrel hunt and discovered the absence of his wife from their home, he went over to the home of the defendant and as quickly as he entered the house trouble commenced. The deceased slapped his wife and ordered her home and when Lola Stinnett interfered, he knocked her down and started to stomp her. The defendant then grabbed the pistol from the soldier and shot the deceased taking his life. This was the testimony of the defendant and her sister, and the State had no evidence to refute this evidence of the defendant, other than the statement allegedly made by the defendant to the wife of the deceased that if she did not keep her husband at home that she intended to kill him.

No proper showing having been made to the court at the time the motion for continuance was overruled, we cannot conclude from the record that there is such fundamental error in the record that this court should on our own motion reverse the cause because of the failure of the trial court to sustain the oral motion for a continuance. In all other respects save this, counsel who appeared for defendant at the trial, represented the defendant in an able manner, and we shall not say that he was deficient in respect to the presentation of the mofendant is one of the most able lawyers of this state and we are of the opinion that he knew what he was doing tion for continuance. Counsel who represented the de-

when he allowed the trial to proceed without further urging that the cause be continued. Possibly, he felt in his own mind, with a full knowledge of the defendant's case and the personnel of the jury, that the signs were right for a trial and that possibly the defendant was better off to proceed immediately with a trial rather than try to force a continuance. Knowing the trial court as we do and his reputation for fairness to all parties concerned, which was also known to counsel for defendant, it is evident that counsel preferred to proceed with the trial rather than to present a proper motion which the court would have possibly sustained.

It is further contended that incompetent testimony was admitted which prejudiced the rights of defendant.

As hereinabove noted, Beulah Lankford, wife of the deceased, and sister of the defendant, testified on behalf of the defendant. On cross-examination of the witness by the assistant county attorney, she was asked if her husband left any insurance, to which she replied, "Very little to speak of." She was then asked, "How much?" and answered, "$2,000 in all and that didn't hardly cover the expenses."

No objection was made to these questions, but counsel for defendant proceeded to examine the witness to show that the insurance money which was left had all been spent to pay the expenses of burial and debts left by deceased. Counsel for the defendant then moved to strike the evidence to which the court replied that he doubted if the evidence was competent, but in view of the fact that counsel for defendant had examined her upon this question he would let it stay in the record. No exception was reserved to this action of the court.

Complaint is also made of the admission in rebuttal of the testimony of the witness Dick Rabun, an officer, who had testified for the state as a part of its case in chief, on the ground that the testimony in rebuttal by the officer was a rehash of the state's case and unfair to the defendant.

When the witness, Beulah Lankford, was on the stand, certain questions were asked the witness relative to the statements which she made the day after the shooting occurred to Officer Rabun. To some of these questions the witness stated that she did not remember and in response to other statements she denied making the statements attributed to her. A proper foundation was thus laid for impeaching the witness in rebuttal.

At the conclusion of the testimony of the witness, Beulah Lankford, the court properly instructed the jury that the evidence of the statements allegedly made by Beulah Lankford to Officer Rabun was admitted for the sole purpose of affecting the credibility of the witness, Beulah Lankford, if it did so, and such statements were not binding on the defendant and were not admitted as evidence of the guilt of the defendant but only for the purpose of affecting the credibility of the witness, Beulah Lankford.

It is next contended that the county attorney was guilty of misconduct in making a comment while the wife of the deceased was testifying, which comment had the effect of forcing the defendant to take the stand and such action of the county attorney prevented the defendant from having a fair and impartial trial.

In connection with this proposition the record discloses the following:

"Q. (By Mr. Champion:) After your husband had been shot, did you know where the defendant got the gun, did she get it out of this boy's hand? A. Yes, she did. By Mr. Williams (county attorney): We object to that, she can tell. By the Court: She has already made the statement, that would be repetition."

It is contended that the reference by the county attorney when he said "She can tell" was that the defendant could take the witness stand and tell about the matter, and amounted to a challenge to the defendant to take the witness stand. In considering this proposition, we note from the record that counsel for the defendant had been asking some leading questions to which objection had been made by the county attorney, and it appears that the statement "She can tell," made by the county attorney, referred to the fact that the witness was able to tell without counsel for the defendant asking her a leading question by which the answer was put in the witness's mouth.

Furthermore, the record discloses that, during the trial and before the state had rested its case, counsel for the defense announced in open court "This defendant is going to take the stand." In view of this statement that was made by counsel, we cannot see how the question by the county attorney could have been said to have had the effect of forcing the defendant to take the witness stand.

We do not see any violation of the statute which provides that:

"In the trial of all indictments, informations, complaints and other proceedings against persons charged with the commission of a crime, offense or misdemeanor

before any court or committing magistrate in this State, the person charged shall at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not create any presumption against him nor be mentioned on the trial; if commented upon by counsel it shall be ground for a new trial." Tit. 22 O. S. 1941 § 701.

An amended motion for new trial on the ground of newly discovered evidence was filed by counsel for defendant in which it was alleged that about 30 or 40 minutes prior to the time of the fatal shooting, the deceased entered a store building in a drunken condition, broke down the door and created a considerable disturbance; and that his condition was such that he did not know what he was doing, and that at that time by reason of his drunken condition he had lost control of his senses.

The statute providing for a new trial upon the ground of newly discovered evidence (Tit. 22 O. S. 1941 § 952) further provides: "* * * The defendant must produce at the hearing in support thereof affidavits of witnesses, or he may take testimony in support thereof." The statute was not complied with in that no affidavits were furnished the court and no testimony in support of this newly discovered evidence was offered.

Both the defendant and Mrs. Lankford testified that the deceased was in a drunken fighting mood when he entered the home of defendant and according to the wife of the deceased the fight started immediately.

It has often been held that a new trial should not be granted on ground of newly discovered evidence where such evidence is cumulative and there is no reasonable probability of a different result. Beaver v. State, 54 Okla. Cr. 49, 14 P. 2d 423; Cummings v. State, 57 Okla.

Cr. 428, 48 P. 2d 879; John v. State, 79 Okla. Cr. 50, 151 P. 2d 808.

By reason of the minimum punishment for manslaughter in the first degree which was assessed by the jury, it appears that the jury was convinced that the deceased was in a drunken condition when he entered the home of defendant, but that his acts on that occasion were not sufficient to have justified the defendant in taking his life. For that reason, we think the alleged newly discovered evidence would not have changed the result of the trial. All of the evidence pointed to the conclusion that the deceased was in a drunken condition and the state did not attempt to deny that fact. For that reason, we hold that the alleged newly discovered evidence was cumulative and that there is no reasonable probability that if such evidence had been introduced, a different result would have been reached.

The judgment and sentence of the district court of Carter county is affirmed.

BAREFOOT, P. J., and BRETT, J., concur.