**Matter of the Application of Jim IGO for Writ of Habeas Corpus.**

No. A–12622.

Criminal Court of Appeals of Oklahoma.

Sept. 24, 1958.

Rehearing Denied Nov. 5, 1958.

Earl Boyd Pierce, Muskogee, for petitioner.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., for respondent.

BRETT, Presiding Judge.

This is an original petition for writ of habeas corpus brought by the petitioner, Jim Igo, who complains that he is being unlawfully detained in the state penitentiary by the warden thereof. He alleges the cause of said restraint is a certain judgment and sentence entered against him in the District Court of Coal County, Oklahoma, for murder, a second and subsequent offense. It is alleged that he murdered his wife on April 21, 1952, after other prior felony convictions. Conviction was had on the charge as alleged and judgment and sentence thereon imposed was affirmed herein on January 20, 1954, and rehearing denied on March 24, 1954. Igo v. State, Okl.Cr., 267 P.2d 1082.

In the proceeding herein, the petitioner attacks the jurisdiction of the Justice of the Peace Court and the jurisdiction of the District Court. The attack on the jurisdiction of the Justice of the Peace Court is to the effect that the petitioner

sought a continuance in said court sitting as a committing magistrate, which was denied. He further complains he moved for a change of venue, which was likewise denied. He further complains he thereafter sought time to present a petition in the District Court for mandamus to obtain a change of venue, which was denied. He contends that these matters constituted error defeating the jurisdiction of the District Court to try him. He queries, what more could he do? The answer is what numerous cases have held he should have done. He should have filed a motion to quash the information, which he did not do. The attack now sought to be made by habeas corpus is out of time and to no avail. 22 O.S.1951 § 492 reads, in part:

"* * * he may, in answer to the arraignment, either move the court to set aside the indictment, or information or may demur or plead thereto."

22 O.S.1951 § 493 reads:

"The indictment or information must be set aside by the court, in which the defendant is arraigned, and upon his motion in any of the following cases:

"1. When it is not found, indorsed, presented or filed, as described by the statutes * * * and that fact is known to the defendant at or before the time the jury is sworn to try the cause: Provided, that the defendant shall be conclusively presumed to know matters of record."

■ In this connection, it has been repeatedly held that even where no preliminary is held at all in a felony case, that such matter must be raised by a plea in abatement or motion to quash the information. Williams v. State, 6 Okl.Cr. 373, 118 P. 1006; Buttry v. State, 18 Okl.Cr. 330, 194 P. 286; Perry v. State, 31 Okl.Cr. 250, 238 P. 229; Herren v. State, 72 Okl.Cr. 254, 115 P.2d 258. In Perry v. State, supra, it was contended the trial court was without jurisdiction because the record failed to show any preliminary hearing was held. This contention was denied on appeal for the reason hereinbefore given. It has

many times been held that objections to an information based on the absence of any essential preliminary proceeding should be made by motion to quash or by plea in abatement before pleading to the merits. Ralston v. State, 16 Okl.Cr. 634, 185 P. 831. In fact, the foregoing rule applies to any irregularities in the preliminary proceedings. Ingram v. State, 87 Okl.Cr. 223, 196 P.2d 534; Herren v. State, supra. Moreover, it has been held that when a defendant is arraigned on an information and pleads to the merits, he waives the right to a preliminary hearing, and if one was had, the right to object to any irregularities therein. Sheller v. State, 58 Okl.Cr. 204, 52 P.2d 105; Ex parte Story, 88 Okl.Cr. 358, 203 P.2d 474, and numerous other cases to the same effect.

The record of the original appeal herein, Igo v. State, supra, which we have reexamined, does not reveal either a motion to quash the information or a plea in abatement, but to the contrary, discloses that the defendant made no attack on the information on arraignment, but pled not guilty and stood trial thereon. It is thus apparent that the petitioner herein waived the right to object to any irregularities in the preliminary hearing by failure to file timely motion to quash the information.

■ The petitioner's second contention is that he was illegally charged, tried, and sentenced for an alleged crime which is unknown to the Oklahoma Penal Code; murder, a second and subsequent offense. This contention was discussed and passed on in Igo v. State, supra [267 P.2d 1085]. In syllabi 5 and 6, we said:

"Habitual criminal statute, Tit. 21 O.S.1951 § 52, authorizing increased punishment for subsequent conviction should not be used by prosecution in capital felonies, unless it is clear that the court must charge the jury on some included offense.

"Where in a prosecution for murder the State's counsel from knowledge of the nature of testimony of State's witnesses, are convinced that the trial

court would be justified, if not compelled by such testimony alone, to give an instruction on the included offense of manslaughter in the first degree, it is, under such circumstances, proper to charge the crime as a second and subsequent offense under the provisions of Tit. 21 O.S.1951 §§ 51, 54, commonly known as the habitual criminal act."

While there is no crime specifically defined as "murder, a second and subsequent offense," it is apparent from the foregoing that under permissible conditions, the accused may be so charged.

Moreover, the statutes define the crime of murder, 21 O.S.1951 §§ 691 and 701, as the killing of a human being by another when perpetrated without authority of law with the premeditated design to effect the death of the person killed or of any other human being, etc. The statute also defines a second and subsequent offense, 21 O.S.1951 § 51, which has been repeatedly held does not define a crime but describes circumstances wherein one found guilty of a specific crime may be subjected to a greater punishment as a second and subsequent offender. Salisbury v. State, 80 Okl.Cr. 13, 156 P.2d 149; Spann v. State, 69 Okl.Cr. 369, 103 P.2d 389, and many other cases. The constitutionality of Sec. 51 has been passed upon and its clarity upheld. We do not find its terms vague and indefinite as contended for by the petitioner. Ex parte Hibbs, 86 Okl.Cr. 113, 190 P. 2d 156, certiorari denied Hibbs v. State, 335 U.S. 835, 69 S.Ct. 25, 93 L.Ed. 387; Ex parte Sanders, 95 Okl.Cr. 33, 238 P.2d 840, certiorari denied Sanders v. Waters, 342 U.S. 929, 72 S.Ct. 370, 96 L.Ed. 692. It is thus apparent there was no attempt on the part of the pleader herein to create a new crime not recognized by statute, but only an attempt to so plead as to meet the contingency of the defense which might establish facts that would require the trial court to charge the jury on the included offense of manslaughter in the first degree. Igo v. State, supra; Broyles v. State, 83 Okl. Cr. 83, 173 P.2d 235. In this regard, the prosecutor herein was not in error. The trial court believed the facts warranted the giving of an instruction on manslaughter in the first degree, and we said on the appeal that he was not in error in so doing. It clearly appears that the substance of this contention was passed on in Igo v. State, supra, and this proceeding is an attempt to override the decision heretofore rendered. The same may be said in re the defendant's attempt to obtain a change of venue at the time of trial. This matter was disposed of on the appeal of the case on its merits, and may not now be raised by habeas corpus, since habeas corpus is not a substitute for appeal. In re Boyd, Okl.Cr., 302 P.2d 494; In re Goff, Okl.Cr., 312 P.2d 902. We have examined the information in this case and find that it states a cause of action for murder and also pleads facts of prior conviction. The information was never attacked in any manner. If the defendant had any objections thereto, they were waived.

Such being the state of the record, the trial court was thus vested with jurisdiction under the law of the subject matter, and having a jurisdiction of the person of the defendant and not exceeding its authority in pronouncing judgment and sentence, 21 O.S.1951 § 707; In re Goff, supra, the court had jurisdiction to try and convict.

We do not find anything occurred in the trial that was of so fundamental nature as to cause the trial court to lose jurisdiction, and we believe the defendant had a fair and impartial trial. The petitioner having failed to establish the right to relief by habeas corpus, the petition is accordingly denied.

POWELL, J., concurs.

NIX, J., concurs specially.

NIX, Judge (concurring).

I do not disagree with the material aspects of the majority opinion and I am in accord with the law related in Syllabi 1, 2, 4, and 5. However, the opportunity presents itself to discuss the application of Ti-

tle 21 O.S.A. § 51 (Habitual Criminal Statute), the legislative revision of which is long past due. This statute enacted in 1910 authorizes the filing of an information charging a former conviction for the purpose of increasing the punishment for the crime with which the defendant is charged. Since the statute is only for the purpose of increasing punishment, it appears to your writer improper in a capital case, to charge the alleged offense was a second and subsequent offense for the reason that the allegation would not authorize an increase in punishment for the alleged offender, but could only be used by the state to attack the character and reputation of the defendant by introducing evidence in chief to show former conviction. Though this procedure has been approved by this Court several times, it is to be noted it was approved with reservation, cautiousness, and condemnation. I find no other jurisdiction passing with favor upon this question. It is with the utmost approval that I quote from the decision of Wright v. Commonwealth, 109 Va. 847, 65 S.E. 19, 20:

> "It has long been the policy of this commonwealth to visit with cumulative punishment habitual offenders who come within the terms of these enactments. * * * We think, however, that both the phraseology and intendment of the present provisions preclude the possibility of their application to a prosecution for a capital felony, and demand that their operation be limited strictly to indictments for offenses punishable by confinement in the penitentiary only. * * *

> "The subject is also quite fully treated in 8 Am. & Eng.Ency. of Law, 479 et seq., under the head of 'Cumulative Punishment,' and in none of the numerous decisions there assembled, so far as we have had opportunity to examine them, has the rule been attempted to be applied to a prosecution, the primary purpose of which was to inflict capital punishment upon the accused. Indeed, the incongruity of such application would seem obvious. There

can, of course, be no cumulative punishment in a capital case, and the manifest design and purpose of the Legislature, as we have seen, was to prevent the repetition and increase of crimes by imposing additional imprisonment upon habitual offenders for successive offenses; but we cannot suppose that the Legislature intended that these salutary statutes should be used to prejudice a prisoner on trial for his life, by opening wide the door to the admission of evidence of distinct offenses, tending, at least, to establish the bad character of the accused by showing that he is an old offender, on the theory that in a prosecution of that sort it is possible for the jury to find him guilty of an offense within the statute. If such construction were permissible, it might not infrequently result in the conviction of the accused of a capital felony upon evidence wholly inadmissible to establish his guilt. Surely, in the interpretation of these extremely penal statutes, the courts would not be warranted in adopting a construction which would render such a result possible.

> "It was not the intention of the statute, even in cases to which it applies, by the introduction of proof of former convictions, to supply substantive evidence of the guilt of the accused in the principal case, but only to enhance the punishment in the event his guilt should be proved by independent testimony."

The majority opinion justifies the procedure by citing previous decisions of this court, which places in the hands of the county attorney the right to charge the previous conviction in a murder case if he believes from the anticipated evidence that there will be an instruction on the lesser offense of manslaughter, which carries a penalty from 4 years to life in the penitentiary. Under the Habitual Criminal Statute, the minimum would be increased from 4 to 10 years, thereby, permitting an increase in the minimum penalty of 6 years. This does

not appear to be good reasoning in view of the fact that if the county attorney anticipated a verdict on a charge of murder, being reduced to manslaughter with a sentence less than 10 years, it would have been showing a finer degree of good faith to have charged the defendant with manslaughter in the first instance. If such allegations were not in good faith it must be assumed that the previous convictions were alleged to show that the defendant was generally a bad man and to put his character at issue before it was offered by the defendant. Thus, the avenue to subterfuge is opened to get around the long standing rule that previous convictions are not admissible until defendant takes the stand and the inquiry then permitted for the sole purpose of testing the credibility of the witness. Your writer, from more than the average experience in the practice of criminal law, has long believed that the hazard presented in the matter of prior convictions, pleaded in an indictment or information, far exceeds any value derived therefrom. Whether under the statute, it is properly or improperly pleaded, the contentions that defendant is prejudiced thereby cannot be without merit. There can be little doubt that one of the "gems" of our jurisprudence is that a defendant is presumed to be innocent until proven guilty and no one can deny that reading an information to a jury reciting numerous previous convictions has a strong tendency to destroy that presumption of innocence. All jurisdictions are in accord and the rule everywhere excludes not only evidence of another crime, but also evidence tending to degrade the accused, to prejudice the jury against him, to divert their minds from the real issue which they have to determine, or to persuade them by matters which they have no legal right to consider, and that the accused, for reasons other than those based upon legitimate evidence, was more likely to have committed the particular crime for which he is on trial. The statute in most of the states which provides for additional punishment for subsequent offenders has created an abundance of litigation in all jurisdictions having the same. It has been contended that it constituted double punishment. That if defendant served his time on one offense and paid his debt to society that the offense could not be used as a basis for additional punishment in case of a subsequent conviction. Likewise, it has been contended that it constitutes double jeopardy. Decisions are numerous holding contrary to these contentions. It has been asserted in numerous appeals that the court erred in permitting the county attorney to read, to the jury, that part of the information alleging previous convictions. That the defendant was prejudiced thereby. Though this contention has been overruled it has never been said to be without merit, and in most instances, have remarked in the dictum of said decision that entire fairness in prosecution of this character would suggest some statutory changes. State v. Finding, 123 Minn. 413, 144 N.W. 142, 49 L.R.A.,N.S., 449; People v. Sickles, 156 N.Y. 541, 51 N.E. 288; State ex rel. Edelstein v. Huneke, 140 Wash. 385, 249 P. 784, 250 P. 469; Johnson v. People, 55 N.Y. 512.

In the Edelstein case, supra [140 Wash. 385, 249 P. 785], the Supreme Court of Washington went as far as to say:

"It seems too plain for argument that to place before a jury the charge in an indictment, and to offer evidence on trial as a part of the state's case that the defendant has previously been convicted of one or more offenses is to run a great risk of creating a prejudice in the minds of the jury that no instruction of the court can wholly erase, and, while appellate courts will presume that the jury has followed the instructions of the court, yet we cannot blind our eyes to the active danger ever lurking in such action. Courts have so recognized this fact that, although finding no error in the charging and showing to the jury upon an original charge the fact of previous convictions, they have frequently adverted to its danger and suggested ways to eliminate that prejudice."

Research will reveal that this question has been highly controversial for more than a

century and in most instances looked upon with skepticism. One of the first cases raising the question was State v. Smith, 8 S.C. Law Rep. 460, reported May, 1832. In that case defendant was charged with horse stealing, second offense; the first offense punishable by whipping, the second offense death without benefit of clergy. It is interesting to note that their cumulative punishment allowed the benefit of clergy after first conviction and second conviction was without benefit of clergy. They said in the Smith case, supra:

"The indictment need not state whether it is for the first or a second offense, although the crime be punishable for the first offense with whipping and for the second with death without benefit of clergy."

The New York Supreme Court in January, 1884, commented on the question in Johnson v. People, supra, and said:

"The objection that the evidence may effect the prisoner's character has no force when such evidence relates to the issue to be tried. Such evidence may be prejudicial to a prisoner as to the second offense and a case might occur of a conviction upon too slight evidence, though the influence which a previous conviction of a similar offense exerts upon the minds of the jury: but there is no legal presumption that such a result will ever be produced."

History will reveal that this question reached such a point in England in 1837 that a statute was enacted prohibiting the reading of the information to the jury relative to previous convictions. It provided that the principal charge was to be found by the jury, and then proof of previous convictions was presented to them. In the case of State v. Ferrone, 96 Conn. 160, 113 A. 452, 457, April, 1921, calling attention to the great danger of prejudice in such a case, sets out a procedure that it believed to be fair to the defendant which is much the same as the English statutes, saying:

"The information should be divided into two parts. In the first the partic-ular offense with which the accused is charged should be set forth, and this should be upon the first page of the information and signed by the prosecuting officer. In the second part former convictions should be alleged, and this should be upon the second page of the information, separable from the first page and signed by the prosecuting officer. The entire information should be read to the accused and his plea taken in the absence of the jurors. When the jury has been impaneled and sworn, the clerk should read to them only that part of the information which sets forth the crime for which the accused is to be tried. The trial should then proceed in every respect as if there were no allegations of former convictions, of which no mention should be made in the evidence, or in the remarks of counsel, or in the charge of the court. When the jury retire to consider their verdict, only the first page of the information, on which the crime charged is set out, should be given to them. If they return a verdict of guilty, the second part of the information, in which former convictions are alleged, should be read to them without reswearing them, and they should be charged to inquire on that issue."

In discussing this matter further in the Ferrone case, supra, the Court said:

"It cannot be believed that an accused man would ever have a fair trial, resulting in a verdict not affected by prejudice or by considerations by which the jury should not be influenced, if during that trial allegations that he has twice before been convicted of state prison crimes have been read to the jury, and evidence of his former convictions has been placed before them. It is beyond question that knowledge of such facts must necessarily prejudice the minds of his triers against the accused, and cause him more serious injury than that which he would suffer from any improper remarks of the state's attorney."

It was no doubt in recognition of prejudice that might be created that the Legislature of several states has prescribed a procedure that protected the rights of the defendant in such cases. Some require a supplemental hearing after the jury has reached a verdict, said hearing to be before the trial judge prior to sentence date, at which time evidence will be heard relative to previous conviction. It has been suggested that it would be a wholesome procedure to exclude evidence of previous conviction from the jury and after they had rendered their verdict as to guilt or innocence and assessed the punishment that the trial judge be vested with the authority, in case of previous conviction to make the punishment conform to the habitual criminal act, provided the jury had assessed the punishment less than the minimum under said Act. The finality of the procedure to be adopted would be within the province of the Legislature. This, of necessity, leads us to the primary purpose of this discussion whether the rights of a defendant are safeguarded by the established procedure, or whether the practice contended for by the petitioner will more nearly approach unto that great end, which, although not always attained, is the delight of all courts—namely, a fair trial for all persons freed from every taint of prejudice. It is my opinion that it is a matter for the Legislature to seriously consider and a procedure outlined by which the courts are to be governed in the application of Title 21 O.S.A. § 51, to remove any inference of prejudice in the trial of such a case.